1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DOUGLAS DWAYNE GIRLEY,                    No.  2:12-cv-1938 KJM KJN P

12                    Petitioner,

13          v.                                 FINDINGS and RECOMMENDATIONS

14   GARY SWARTHOUT, WARDEN,

15                    Respondent.

16

17   I.  Introduction

18          Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of

19   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2009 conviction for

20   attempted murder and other charges.  Petitioner claims that the trial court should have conducted

21   a second competency hearing, and that the trial court erred when, during closing arguments, it

22   removed petitioner from the courtroom due to his disorderly conduct.  After careful review of the

23   record, this court concludes that the petition should be denied.

24   II.  Procedural History

25          On June 25, 2009, a jury found petitioner guilty of attempted premeditated murder of his

26   wife, infliction of corporal injury on a spouse, and assault by force likely to produce great bodily

27   injury.  (Respondent's Lodged Document ("LD") 1.)  The jury found true the following

28   enhancements:  personal infliction of great bodily injury and personal use of a deadly weapon

                                                  1

(tire iron), and found petitioner suffered a prior conviction and prior serious felony for a 1999 assault with a deadly weapon.  On July 20, 2009, petitioner was sentenced to fourteen years to life in state prison, and a determinate term of 10 years for the enhancements, to be served before the indeterminate term.  The trial court also sentenced petitioner to 18 years on count 1 (spousal injury), and 17 years on count 2 (aggravated assault), but stayed those sentences under California Penal Code Section 654.

Petitioner appealed the conviction to the California Court of Appeal, Third Appellate District.  The Court of Appeal modified the judgment to correct sentencing errors,[1] but otherwise affirmed the conviction on February 15, 2011.  (LD 2.)

On March 21, 2011, petitioner filed a petition for review in the California Supreme Court, which was denied without comment on April 20, 2011.  (LD Nos. 3, 4.)

Petitioner filed no post-conviction petitions for relief in state court.  (ECF No. 1 at 3.)

The instant petition was filed on July 24, 2012.  (ECF No. 1.)  Respondent filed an answer (ECF No. 28); petitioner filed a reply (ECF No. 41).

III.  Facts[2]

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following background and factual summary:

> On December 30, 2008, the trial court suspended the proceedings for an evaluation of defendant's competence to stand trial.  (§§ 1367, 1368.)  On February 5, 2009, the trial court found defendant competent to stand trial.
>
> Evidence at trial included the following:
>
> After approximately 16 years of marriage, defendant's wife, Gwendolyn Taylor-Girley (the victim), wanted a divorce.

---

[1]  The abstract of judgment, which did not reflect any section 667 enhancement, was modified to add a five year section 667, subdivision (a), enhancement on count one, and to add 32 days of presentence conduct credits under section 2933.1.  (LD 2 at 11-12.)

[2]  The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Girley, No. SF110002A (Feb. 16, 2011), a copy of which was lodged by respondent as LD 2 on October 19, 2012.

Defendant did not. They argued.  On October 20, 2008, defendant hit the victim with a tire iron in their garage and choked her with his hands.  The victim suffered a skull fracture, a head laceration requiring approximately 30 staples, two fractured index fingers, bruises, and a recurring problem with double vision.

The next day, defendant left a message on the victim's voicemail, stating:  "In case you lived through that trauma, I was trying to make sure you was [sic] dead and I was going to be dead right along with you, but you lived through it, and you'll see me at my funeral because I'll be the one dead.  Forced me over the edge, now I got to go ahead and finish what I started.  And likely, you was involved in this death right now.  I couldn't take it no more, with you bitch slapping me over and over again, you couldn't leave well enough alone.  Now I got to go ahead and finish off my life, thinking we was going to be buried together, death do us part."

Defendant testified at trial and claimed the victim is bipolar and prone to hallucinations.  Defendant's version of events was that the victim was startled by his presence in the garage, lost her balance, and hit her head.  He panicked and ran.  He left the voicemail message because he was "out of [his] mind."  He swallowed a bottle of sleeping pills, awoke in a hospital, and fled for fear of being sent to a mental hospital.  Defendant acknowledged he pleaded guilty in 1999 to holding a gun on his wife, though he claimed it never happened and he was talked into the plea.

People v. Girley, 2011 WL 536440, *1-2 (Cal. App. 3 Dist., Feb. 15, 2011).

IV.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 4 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

3

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may circuit precedent be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[3] Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002

---

[3]   Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

1    (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that

2    court concludes in its independent judgment that the relevant state-court decision applied clearly

3    established federal law erroneously or incorrectly.  Rather, that application must also be

4    unreasonable." Williams, 529 U.S. at 412.  See also Schriro v. Landrigan, 550 U.S. 465, 473

5    (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

6    review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

7    "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

8    'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v.

9    Richter, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

10   Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

11   must show that the state court's ruling on the claim being presented in federal court was so

12   lacking in justification that there was an error well understood and comprehended in existing law

13   beyond any possibility for fairminded disagreement." Richter,131 S. Ct. at 786-87.

14        If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

15   court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford,

16   527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

17   (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

18   § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

19   considering de novo the constitutional issues raised.").

20        The court looks to the last reasoned state court decision as the basis for the state court

21   judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

22   If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

23   previous state court decision, this court may consider both decisions to ascertain the reasoning of

24   the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a

25   federal claim has been presented to a state court and the state court has denied relief, it may be

26   presumed that the state court adjudicated the claim on the merits in the absence of any indication

27   or state-law procedural principles to the contrary." Richter, 131 S. Ct. at 784-85.  This

28   presumption may be overcome by a showing "there is reason to think some other explanation for

1    the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797,

2    803 (1991)).  Similarly, when a state court decision on a petitioner's claims rejects some claims

3    but does not expressly address a federal claim, a federal habeas court must presume, subject to

4    rebuttal, that the federal claim was adjudicated on the merits.  Johnson v. Williams, 133 S. Ct.

5    1088, 1091 (2013).

6         Where the state court reaches a decision on the merits but provides no reasoning to

7    support its conclusion, a federal habeas court independently reviews the record to determine

8    whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v.

9    Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo

10   review of the constitutional issue, but rather, the only method by which we can determine whether

11   a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853.  Where no

12   reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

13   reasonable basis for the state court to deny relief." Richter, 131 S. Ct. at 784.

14        A summary denial is presumed to be a denial on the merits of the petitioner's claims.

15   Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012).  While the federal court cannot analyze

16   just what the state court did when it issued a summary denial, the federal court must review the

17   state court record to determine whether there was any "reasonable basis for the state court to deny

18   relief." Richter, 131 S. Ct. at 784.  This court "must determine what arguments or theories . . .

19   could have supported, the state court's decision; and then it must ask whether it is possible

20   fairminded jurists could disagree that those arguments or theories are inconsistent with the

21   holding in a prior decision of [the Supreme] Court." Id. at 786.  The petitioner bears "the burden

22   to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v.

23   Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 131 S. Ct. at 784).

24        When it is clear, however, that a state court has not reached the merits of a petitioner's

25   claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

26   habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462

27   F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

28   ////

6

1    V. Petitioner's Claims

2         1. Second Competency Hearing

3              A. The Parties' Arguments

4         Petitioner claims that the trial court should have conducted, *sua sponte*, a second

5    competency hearing.  Petitioner alleges that his jump from the second story tier at the jail was a

6    suicide attempt, and that after the judge was aware that petitioner attempted suicide, and when he

7    provided "seemingly incoherent responses to the trial judge," and became ill in court, the judge

8    should have suspended the trial and had petitioner evaluated by a psychiatrist or psychologist.

9    (ECF No. 1 at 6.)  Petitioner argues that the judge, prosecutor, law enforcement, and medical

10   doctors were not qualified to determine petitioner's mental competence.  (Id.)

11        Respondent counters that the state court's rejection of this claim was not contrary to or an

12   unreasonable application of clearly established federal law.  Respondent contends that the state

13   court identified the correct standard, and reasonably determined the facts and applied the correct

14   standard.  Respondent argues that the record shows that the state court reasonably concluded

15   petitioner was feigning incompetence to delay the trial.  Because medical examinations failed to

16   show there was anything wrong with petitioner each time he passed out, it was plausible for the

17   state court to conclude petitioner was malingering.  Respondent argues that petitioner's purported

18   confusion on June 23, 2009, does not show that the state court's decision was unreasonable,

19   because one plausible view of such confusion was that it was merely his latest attempt to delay

20   the trial.   In addition, respondent contends that after the purported confusion, petitioner had an

21   off-the-record discussion with his attorney who indicated petitioner wished to remain for closing

22   arguments and jury instructions, raising a reasonable inference that petitioner understood where

23   he was and what was going on.  Such inference is bolstered by Dr. Buys' statement that petitioner

24   was "alert" and "oriented" when he arrived at the hospital, and by the trial judge noting that he

25   heard the paramedics ask petitioner if he wanted to go to the hospital, and petitioner responded

26   no, he wanted to stay here and finish this.  (RT 598.)

27        Further, respondent argues that any memory loss sustained from the jump from the second

28   story was limited to June 18, 2009, the date of the jump, and June 25, 2009, because on July 20,

2009, during sentencing, petitioner recounted his defense testimony without difficulty.  (ECF No. 28 at 23-24.)  Because petitioner's injury was sustained after he testified and the defense concluded its case, respondent argues that one plausible view of the evidence is that petitioner's memory loss did not affect his ability to assist his counsel in presenting his defense, or to understand the nature of the proceedings.

In reply,[4] while not entirely clear, petitioner argues that "[t]he psychiatrist's hostile opinion of petitioner's possible behavior has to be rooted in his opinion of petitioner's mindset. No normal person would jump out a two story building.  To say [petitioner is] okay is a misstatement."  (ECF No. 41 at 2.)  Petitioner contends that he should have been provided a brain scan after the jump to determine whether he sustained nerve damage.  Petitioner states he was on medication following the jump, so his mental state should not be presumed.  Finally, petitioner argues that denying him a second competency hearing violated his due process rights because it can be seen as punishment.  (ECF No. 41 at 3.)

B. State Court Opinion

The last reasoned rejection of petitioner's first claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed this claim as follows:

> The trial court received and considered two psychiatrists' evaluations on February 5, 2009, and found defendant competent to stand trial.[5]  One doctor added his opinion that there was a "significant likelihood" defendant might "act out" to disrupt the proceedings, which defendant believed had very little chance of turning out in his favor.

---

[4]  Petitioner also makes reference to an argument that the jury should not have been allowed to view the tire-iron without the results of a DNA test on the tire-iron.  (ECF No. 41 at 3.)  However, as noted in this court's April 3, 2014 order, the claims contained in the instant petition do not relate to DNA evidence.  (ECF No. 42 at 1.)

[5]  Review of the record reflects that Dr. Chellsen, Ph.D., a Clinical Psychologist, recorded the following diagnostic impressions of petitioner:  "Axis I:  Rule out Bipolar Disorder; Axis II:  Paranoid and Antisocial Personality Features; and Axis III:  Chronic pain, by self-report."  (Clerk's Aug. Tr. at 5.)  Dr. Kent E. Rogerson, a Psychiatrist, recorded the following diagnostic impressions:  "Axis I:  Adjustment Disorder with Anxious and Depressed Mood.  Possible history of Attention Deficit Hyperactivity Disorder; Axis II:  Personality Disorder, Not Otherwise Specified, with Antisocial Traits; Axis III:  Orthopedic Pain."  (Clerk's Aug. Tr. at 2.)

On March 4, 2009, during a court recess of the preliminary hearing, defendant either fell, slipped, or laid down on the floor of the holding cell.  He was medically examined, as required by the rules, and returned to court the next day, claiming he did not feel well enough to help counsel.  After discussion, the preliminary hearing resumed.

On the date set for trial, June 11, 2009, defendant "passed out" in his holding cell.  A medical examination revealed no medical problem.

During the prosecutor's closing argument on June 17, 2009, defendant began sweating and appeared as if he were going to pass out.  The trial court ordered a recess.  A hospital examination revealed nothing medically wrong.  After defendant was released from the hospital, he jumped out a second-story window at the jail, requiring medical treatment of several staples to the head and a neck brace.

Defendant next appeared in court on June 23, 2009.  Defendant said he took medication but did not know its name.  When asked if he was ready to finish the trial, defendant asked, "What trial?"  When asked why he jumped, defendant said he did not jump; he fell out of bed.  When asked why he got sick in court the previous week, defendant gave no response and, when pressed, just repeated the question, "What happened?"

Defense counsel expressed concern about defendant's competency.  The trial court concluded there was insufficient evidence of a change in circumstances as to defendant's competence to stand trial.

The prosecutor continued his closing argument, during which defendant passed out.  Another medical examination revealed no medical cause.  The trial court questioned the doctor who examined defendant for the two most recent incidents.  The doctor stated he could find no medical reason for defendant to pass out. The trial court asked if there was any way to discern feigned fainting.  The doctor said fluttering eyelids would be consistent with faking.  The trial court stated it observed defendant's eyelids moving when he appeared to pass out that day.  The trial court concluded defendant was trying to delay the trial.  The court said:

"Before we started this trial, I admonished [defendant] that his -- if he disrupts the court proceedings in any fashion, I would either have to take additional physical measures, such as chaining him, or I would have him removed from the courtroom.  [¶]  At this point, [defendant] is -- has become so disruptive of these proceedings that he has caused me not to go forward in this trial on three separate occasions, and I find that those disruptions were purposeful, he had a plan, and he put the plan into action and he has been successful in delaying this trial.   [¶]   Therefore, I find that I have no other reasonable means to go forward in this trial.  If I chain him to the chair, it doesn't solve the problem.  [¶]  The least restrictive means I can do is to remove him from the courtroom.  [¶]  At this point, he

9

1
2

is -- he has become so disruptive that he has delayed this trial and he has lost his right to be here in this courtroom.  Therefore, we are going to proceed in his absence. . . ."

3

B

4
5
6
7

Trial of a mentally incompetent criminal defendant violates the due process right to a fair trial under the federal Constitution and state law.  (People v. Rogers (2006) 39 Cal.4th 826, 846.)  A mentally incompetent person is a person who, as a result of mental disorder or developmental disability, is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner.  (§ 1367, subd. (a).)

8
9
10
11
12
13
14

Having already conducted an inquiry into defendant's competency and found him competent in February 2009, the trial court in this case was not required to conduct a second inquiry in June 2009, in the absence of substantial evidence of a change in circumstances giving rise to a serious doubt about the continuing validity of the earlier competency finding.  (People v. Huggins (2006) 38 Cal.4th 175, 220; People v. Kaplan (2007) 149 Cal.App.4th 372, 383-384.)  On appeal, we give deference to the trial court's decision, because the trial court is in a better position to appraise whether the defendant's conduct indicates mental incompetency or a calculated attempt to feign incompetency and delay the proceedings.  (People v. Marshall (1997) 15 Cal.4th 1, 33.)

15
16
17
18
19
20

The record supports the trial court's conclusion that defendant was feigning incompetency to delay the proceedings, as predicted by one of the doctors. Defendant's repeated episodes of falling or fainting delayed court proceedings pending medical examinations which revealed no medical problem.  The repetition alerted the trial court to observe defendant closely, such that the court saw defendant's eyelids flutter during the last episode which, according to the doctor's testimony, was consistent with malingering.  This evidence supports the trial court's conclusion that defendant's second-story jump was simply another deliberate attempt to delay the proceedings.

21
22

Defendant argues he could not fake sweat.  The trial court observed defendant had been "dripping wet" on one occasion.  However, sweating does not create a doubt about the validity of the earlier competency finding.

23
24
25

Defendant argues his confusion in answering the court's questions, "if . . . genuine," created a doubt about his ability to assist his defense.  However, the record supports the trial court's conclusion that defendant's confusion was not genuine.

26
27

Defendant challenges the People's argument that defendant's silence when he received visitors in jail showed he had the mental acuity not to help the prosecution, which he knew was tape-recording the visits.  We do not rely on this argument by the People.

28      ////

1            We conclude the trial court's denial of a second competency
     evaluation is not ground for reversal.

2

3    People v. Girley, 2011 WL 536440 at *2-4.

4            C. Legal Standards

5          The conviction of a legally incompetent defendant violates due process. Cooper v.

6    Oklahoma, 517 U.S. 348, 354 (1996). "The test for incompetence is also well settled. A

7    defendant may not be put to trial unless he 'has sufficient present ability to consult with his

8    lawyer with a reasonable degree of rational understanding . . . [and] a rational as well as factual

9    understanding of the proceedings against him.'" Id. (citation omitted). When the evidence raises

10   a substantial or bona fide doubt about the defendant's mental competency at any point, due

11   process requires a full competency hearing. Pate v. Robinson, 383 U.S. 375, 385 (1966);[6] see

12   Maxwell v. Roe, 606 F.3d 561, 568 (9th Cir. 2010) (holding that same bona-fide-doubt or

13   substantial-evidence standard applies to evaluating necessity of second competency hearing).

14   "The question to be asked by the reviewing court is whether a reasonable judge, situated as was

15   the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should

16   have experienced doubt with respect to competency to stand trial." Davis v. Woodford, 384 F.3d

17   628, 644 (9th Cir. 2003) (internal quotation marks omitted).

18         "[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior

19   medical opinion on competence to stand trial are all relevant in determining whether further

20   inquiry is required"; any one of those factors "standing alone may, in some circumstances, be

21   sufficient." Drope v. Missouri, 420 U.S. 162, 180 (1975). "Because there are no fixed or

22   immutable signs which invariably indicate the need for further inquiry to determine fitness to

23   proceed, the question of competency is often a difficult one in which a wide range of

24   manifestations and subtle nuances are implicated." McMurtrey v. Ryan, 539 F.3d 1112, 1118

25   (9th Cir. 2008) (alterations and internal quotation marks omitted). However, a "state trial and

26   appellate courts' findings that the evidence did not require a competency hearing under Pate are

27

28   _____

[6] California follows the same standards as Pate. See People v. Pennington, 66 Cal.2d 508, 517, 58 Cal. Rptr. 374, 380 (1967).

1  findings of fact to which [the reviewing court] must defer unless they are 'unreasonable' within

2  the meaning of 28 U.S.C. § 2254(d)(2)."  Davis, 384 F.3d at 644 (internal quotations omitted).

3      "[T]he failure to observe procedures adequate to protect a defendant's right not to be tried

4  or convicted while incompetent to stand trial deprives him of his due process right to a fair trial."

5  Drope, 420 U.S. at 172.  A court must conduct a hearing *sua sponte* if it has a "bona fide doubt"

6  as to the defendant's competency.  Maxwell, 606 F.3d at 568.  "Genuine doubt" rather than

7  "synthetic or constructive doubt" is required.  de Kaplany v. Enomoto, 540 F.2d 975, 982-83 (9th

8  Cir. 1976) (en banc).  The burden of establishing mental incompetence rests with the petitioner.

9  Boag v. Raines, 769 F.2d 1341, 1343 (9th Cir. 1985).

10          D.  Discussion

11      Petitioner failed to meet his burden of demonstrating that he was incompetent to stand

12  trial after his alleged suicide attempt.  On June 18, 2009, after petitioner jumped from the second

13  story window, he fell on his back and hit his head.  (RT 552.)  He sustained a head injury

14  requiring staples to the back of his head and a neck brace.  (RT 551.)  On June 23, 2009, while the

15  trial judge was attempting to evaluate petitioner's ability to proceed with the trial, petitioner first

16  provided appropriate responses to the judge (RT 553), but then began providing inappropriate or

17  incoherent responses.  (RT 554-56.)  However, petitioner submitted no medical evidence

18  demonstrating that the fall rendered him unable to understand the proceedings against him or to

19  competently consult with his lawyer.  In addition, following the trial judge's decision that

20  petitioner had not demonstrated a substantial change in his mental state warranting a second

21  competency hearing, petitioner conferred with defense counsel who advised the trial court that

22  petitioner wished to stay for closing arguments and jury instructions.  (RT 567-68.)

23  Subsequently, Dr. Buys stated that petitioner was alert and oriented upon arrival at the hospital,

24  and the trial judge commented that he heard the paramedics ask petitioner if he wanted to go to

25  the hospital, and petitioner said he "wanted to stay here and finish this."  (RT 598.)  Such facts

26  raise an inference that petitioner was able to consult with counsel and understand the proceedings.

27      Further, there is no evidence that petitioner was previously adjudged incompetent to stand

28  trial.  Cf. Blazak v. Ricketts, 1 F.3d 891, 897 (9th Cir. 1993) (competency hearing should have

12

1   been conducted where state trial court had records explaining defendant's extensive history of

2   mental illness and previous adjudications of incompetency, and there was no finding of

3   competency at the time of defendant's trial); Chavez v. United States, 656 F.2d 512, 519 (9th Cir.

4   1981) (evidentiary hearing required where petitioner had a history of antisocial behavior and

5   treatment for mental illness, demonstrated emotional outbursts in court, had a previous

6   psychiatric finding of insanity and there was an inference that petitioner had not even attempted

7   to plea bargain for a lesser sentence); Cacoperdo v. Demosthenes, 37 F.3d 504, 510 (9th Cir.

8   1994) (conclusory allegation that defendant was "suffering mental illness at the time the alleged

9   incidents took place and may still be suffering from mental illness" not sufficient to "raise a

10   reasonable doubt concerning [defendant's] competency to stand trial").  Rather, petitioner was

11   found competent prior to trial, and the psychologist John Chellsen noted that "[t]here appears to

12   be a significant likelihood that the defendant may act out in a manner to delay the upcoming

13   proceedings, which he believes have very little chance of turning out favorably for him."  (Clerk's

14   Aug. Tr. at 6.)

15          Review of the record demonstrates that the trial judge reasonably concluded that

16   petitioner's jump from the second story, his incoherent responses, and subsequent fainting were

17   simply further attempts to delay the trial.  See Maggio v. Fulford, 462 U.S. 111, 117 (1983) (on

18   federal habeas review, trial judge's conclusion that assertion of incompetence was delay tactic

19   was fairly supported by the record).  Petitioner appears to argue that his alleged suicide attempt

20   by jumping out a second story window required the trial court to hold a second competency

21   hearing.  However, the Supreme Court has not clearly established that a suicide attempt requires

22   the trial court to hold a competency hearing.  Drope, 420 U.S. at 180 (declined to address the

23   question of whether a suicide attempt does not create a reasonable doubt of competence to stand

24   trial as a matter of law.)  Rather, the evaluation of doubt relates to the practical aspects

25   concerning defense of the action, such as the capacity to understand the nature of the proceedings,

26   to consult with defense counsel, and to assist in preparing the defense.  Id. at 171.  The Court

27   concluded that "when considered together with the information available prior to trial and the

28   ////

13

1    testimony of [Drope's] wife at trial, the information concerning [Drope's] suicide attempt created

2    a sufficient doubt of his competence to stand trial to require further inquiry on the question." Id.

3            Here, petitioner failed to demonstrate that the trial judge should have harbored a bona fide

4    doubt as to petitioner's competence to stand trial.  As explained above, the record before this

5    court does not reflect an inability on petitioner's part to competently consult with his trial attorney

6    or to understand the proceedings.  The brief period during which petitioner provided incoherent

7    responses to the trial judge took place after petitioner testified and the defense had concluded its

8    case.  Moreover, the record fairly supports the trial judge's view that petitioner was attempting to

9    further delay the trial based on multiple medical examinations showing nothing was medically

10   wrong with the petitioner, as well as Dr. Buys' confirmation that what the trial judge witnessed

11   during the June 23 episode where petitioner allegedly "passed out," was likely petitioner "faking

12   it." (RT 594.)  The Ninth Circuit has recognized that "[not] every suicide attempt inevitably

13   creates a doubt concerning the defendant's competency." Maxwell, 606 F.3d at 571, quoting

14   United States v. Loyola-Dominguez, 125 F.3d 1315, 1319 (9th Cir. 1997).  Thus, the fact that

15   petitioner allegedly attempted suicide, standing alone, is insufficient to reject the trial court's

16   finding that petitioner was malingering.  See Gonzales v. Walker, 2010 WL 3893577, *19 (N.D.

17   Cal. Sept. 30, 2010) ("self-mutilation . . . was consistent with, not contrary to, a finding of

18   malingering and willful manipulation.")

19           Finally, there are numerous cases in which reviewing courts found no error from the

20   failure to hold a competency hearing even where the defendant had arguably much more serious

21   and severe mental impairments than petitioner did here.  See, e.g., Boyde v. Brown, 404 F.3d

22   1159, 1166 (9th Cir. 2005) (concluding that "major depression" and "paranoid delusions" do not

23   necessarily raise a doubt regarding defendant's competence); Bassett v. McCarthy, 549 F.2d 617,

24   619 (9th Cir. 1977) (no error from failure to hold competency hearing despite defendant's history

25   of mental illness from early childhood and paranoid schizophrenia accompanied by delusions and

26   hallucinations); de Kaplany, 540 F.2d at 978-88 (no error from failure to hold competency

27   hearing despite defendant's irrational outbursts at trial, one of which required forcible restraint;

28   evidence of paranoid schizophrenia and multiple personality syndrome; and suicide attempt

14

1  before trial); <u>Young v. Knipp</u>, 2015 WL 539371, **9-11 (C.D. Cal. Feb. 6, 2015) (despite

2  diagnosis of schizophrenia, paranoid type and two prior mental hospitalizations and two prior

3  attempted suicides by overdose, failure to hold second competency hearing following inmate

4  slashing his wrists during trial was not error where inmate was previously found competent, did

5  not exhibit irrational behavior during pretrial or trial, and the timing of the wrist-cutting came

6  after all other attempts to delay trial had not succeeded.) Cf. <u>McMurtrey v. Ryan</u>, 539 F.3d 1112,

7  1126 (9th Cir. 2008) (competency hearing required where defendant had delusions and exhibited

8  volatile and aggressive behavior).

9      For all of these reasons, the record in this case does not support petitioner's allegation that

10  his constitutional rights were violated by the failure of the trial court to order a second

11  competency hearing.

12      2. <u>Removal from Courtroom During Closing Arguments</u>

13      Petitioner claims that the trial court erred when, during closing arguments, it removed

14  petitioner from the courtroom due to his disruptive conduct.  Petitioner argues that he has the

15  right to be present at all critical stages of trial, including closing arguments, and contends the trial

16  judge removed him without an adequate and reasonable warning.  Respondent argues that the

17  state court reasonably determined that, by his misconduct, petitioner lost his right to be present at

18  trial.

19      The last reasoned rejection of petitioner's first claim is the decision of the California

20  Court of Appeal for the Third Appellate District on petitioner's direct appeal.  The state court

21  addressed this claim as follows:

22          A defendant has a constitutional and statutory right to be present at
            critical stages of the criminal trial if his presence would contribute
23          to the fairness of the procedure. (§ 1043; <u>People v. Perry</u> (2006) 38
            Cal.4th 302, 311.)  However, the right is not absolute, and a trial
24          court may remove a disruptive defendant.  (<u>People v. Welch</u> (1999)
            20 Cal.4th 701, 773.)  Section 1043, subdivision (b)(1), allows the
25          trial court to remove a defendant in any case in which "the
            defendant, after he has been warned by the judge that he will be
26          removed if he continues his disruptive behavior, nevertheless insists
            on conducting himself in a manner so disorderly, disruptive, and
27          disrespectful of the court that the trial cannot be carried on with him
            in the courtroom."  We apply de novo review to a trial court's
28          exclusion of a defendant from the trial, insofar as the trial court's

decision entails a measure of the facts against the law.  (People v. Perry, *supra*, 38 Cal.4th at pp. 311-312.)

Here, defendant does not dispute he was disruptive; he argues only that the trial court was required to give him a final warning before removal.

As indicated, when the trial court ordered defendant removed, the court said:  "Before we started this trial, I admonished [defendant] that . . . if he disrupts the court proceedings in any fashion, I would either have to take additional physical measures, such as chaining him, or I would have him removed from courtroom."

The record bears out the trial court.  At the outset, on June 8, 2009, the trial court told defendant, "just some rules of court.  You have to behave appropriately under all circumstances.  That means you are not allowed to speak out of turn or to disrupt the court proceedings in any way.  If you do any of those items or anything that's disruptive, you will be removed from the courtroom.  [¶]  Do you understand that, sir?"  Defendant gave no verbal response until prodded.  He then said, "I heard you."  On June 10, 2009, the trial court observed outside the jury's presence, "[defendant] did speak out in court and was disruptive.  [¶]  You can't do that, [defendant], that will not only cause you to be removed, but it will cause me to chain you to the chair."

Defendant argues he was warned only about disruptive outbursts, not disruptive delays, and he claims he was entitled to a final opportunity to correct the specific behavior that resulted in the removal.  Even assuming for the sake of argument that the trial court should have given an additional warning, reversal is not warranted.

Defendant contends this type of error is structural error requiring reversal per se.  He acknowledges, however, that we are bound by the contrary holding of the California Supreme Court in People v. Perry, *supra*, 38 Cal.4th at page 312, that error in removing a defendant from trial is not structural.  To obtain reversal, the defendant must show prejudice, in that his presence could have substantially benefited the defense.  (Ibid.; People v. Coddington (2000) 23 Cal.4th 529, 630, superseded by statute on other grounds as stated in Verdin v. Superior Court (2008) 43 Cal.4th 1096, 1107, fn. 4; overruled on other grounds in Price v. Superior Court (2001) 25 Cal.4th 1046, 1069, fn. 13.)  Coddington held that absence during closing argument was harmless because nothing in the record suggested the absence prejudiced the defendant.  (Id. at p. 630.)

Here, defendant makes no showing of prejudice, choosing to rely instead on his meritless claim of structural error.

We observe the record shows no prejudice.  Defendant was not removed until closing argument of the prosecution, at which point defendant's presence would not have substantially benefited the defense.  Defense counsel waived defendant's presence for the

court's handling of a jury request to see the tire iron during deliberations. The trial court had defendant brought to the courthouse for possible attendance at the reading of the jury's verdict, but said defendant "is being uncooperative with the court staff and not obeying their directions. So I am not going to bring him up." Defendant was present for sentencing.

We conclude removal of defendant from portions of the trial does not warrant reversal.

People v. Girley, 2011 WL 536440 at *4-5.

The Sixth Amendment guarantee of a criminal defendant's right to be present at trial and other criminal proceedings against him can be waived. Taylor v. United States, 414 U.S. 17, 20 (1973). Such waiver must be voluntary, knowing, and intelligent. Campbell v. Wood, 18 F.3d 662, 671 (9th Cir. 1994).

A defendant also waives his right to be present at trial if, after being warned by the court that disruptive conduct will result in removal from the courtroom, the defendant persists in conduct that justifies exclusion from the courtroom. Illinois v. Allen, 397 U.S. 337, 342-43 (1970) (trial judge has power to exclude disruptive defendant from trial after appropriate warnings, on theory that defendant has waived Sixth Amendment rights). Since "it is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country[,]" Allen, 397 U.S. at 341, "a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." Id. at 343. "Once lost, the right to be present can . . . be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." Id.

As reflected in the state court's review of the record set forth above, petitioner was repeatedly disruptive. The trial court had good cause to remove petitioner from the courtroom. Indeed, the trial judge noted that by June 18, 2009, it was the fourth time that petitioner had delayed the proceedings. (RT 546.) "[I]t looks to me like [petitioner's] trying to stop this court process." (RT 548.) The trial court previously advised petitioner on two separate occasions that

1   the judge would exclude petitioner if he engaged in, or continued to engage in, disruptive

2   behavior.  (RT 13, 101.)  Thus, it is of no consequence that the trial judge did not warn petitioner

3   a third time before finding that petitioner had waived his right to be present for closing

4   arguments.  The trial court effectively conveyed the message on two prior occasions, and the

5   record supports the trial judge's view that petitioner understood yet intentionally engaged in

6   disruptive behavior.  In addition, the trial judge had petitioner brought to the courthouse for the

7   reading of the verdicts, but because he was "being uncooperative with the court staff and not

8   obeying their directions," the judge declined to have petitioner returned to the courtroom.  (RT

9   674.)

10        Moreover, even if petitioner's removal from the courtroom during closing arguments was

11  a denial of his due process right to be present, such error was harmless and did not have a

12  substantial and injurious effect on the verdict.  See Rushen v. Spain, 464 U.S. 114, 118-19 n.2

13  (1983) (per curiam) ("[T]he right to be present during all critical stages of the proceedings . . . [is]

14  subject to harmless error analysis[.]").  Petitioner was removed on June 23, 2009, during the

15  prosecution's closing arguments, and petitioner thereafter missed defense counsel's closing

16  arguments, and the reading of jury instructions to the jury.  (RT 599-665.)  As properly noted by

17  the state court, petitioner's presence at closing argument "would not have substantially benefited

18  the defense" (LD 2 at 11), because by the time of his removal, petitioner had testified extensively

19  on his own behalf (RT 337-506), and all the evidence had been presented.  Petitioner was present

20  for sentencing.

21        The state court's rejection of petitioner's claim of constitutional error arising from his

22  exclusion from the trial proceedings without a third warning was not contrary to, or an

23  unreasonable application of, clearly established federal law.  The state court's rejection also did

24  not constitute an unreasonable determination of the facts in light of the evidence presented.

25  Accordingly, petitioner is not entitled to federal habeas relief on this claim.

26  VI.  Conclusion

27        Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

28  habeas corpus be denied.

18

1    These findings and recommendations are submitted to the United States District Judge

2    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

3    after being served with these findings and recommendations, any party may file written

4    objections with the court and serve a copy on all parties.  Such a document should be captioned

5    "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

6    he shall also address whether a certificate of appealability should issue and, if so, why and as to

7    which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

8    applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

9    § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

10   service of the objections.  The parties are advised that failure to file objections within the

11   specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951

12   F.2d 1153 (9th Cir. 1991).

13   Dated:  April 7, 2015

14

15                                                                KENDALL J. NEWMAN
                                                                  UNITED STATES MAGISTRATE JUDGE

16   /girl1938.157

17

18

19

20

21

22

23

24

25

26

27

28